UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN R. ZEMATER JR.,<br>    Plaintiff<br><br>    v.<br><br>PUBLIC ACTION TO DELIVER<br>SHELTER INC d/b/a HESED HOUSE,<br>    Defendant | No. 22 CV 6712<br><br>Judge Jeremy C. Daniel |

### ORDER

For the reasons stated on the record at the January 30, 2025, motion hearing and in this Order, the defendant's motion to dismiss the plaintiff's third amended complaint [104] is granted. The plaintiff's motion for reconsideration of the Court's order denying his motion for preliminary injunction and sanctions [110] is denied. Because amendment would be futile and prejudicial to the defendant, the plaintiff's motion to file a fourth amended complaint [112] is denied. Civil case terminated.

### STATEMENT[1]

Defendant Public Action to Deliver Shelter Inc. d/b/a Hesed House ("Hesed House") is a non-profit organization that operates homeless shelters in Illinois. ((R. 97 ("TAC").) ¶ 4.)[2] *Pro se* Plaintiff John R. Zemater Jr., a former resident of Hesed House,[3] complains of Hesed House's policy requiring residents to wake-up at 7:00 a.m. (the "Policy"). (*Id.* ¶¶ 6–7.) According to Zemater, the Policy allows the staff to "sweep[] and mop[] the floors" of a single room containing forty-two bunk beds. (*Id.* ¶¶ 8, 31.) He claims that "there is no need" for this daily cleaning by the staff and other residents and that Hesed House "can accommodate [him] without any undue hardship and is choosing not to[.]" (*Id.*) The only exceptions to the Policy are made for

---

[1] The Court has previously set out the factual allegations underlying Zemater's claims (R. 65 ("MTD Order"); R. 103 ("Sanctions Order")), and only restates his allegations here to the extent necessary to analyze the pending motions. The allegations are presumed true for the purpose of resolving the pending motion. *Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[3] Zemater received notice on January 8, 2025 that he may no longer reside at Hesed House. (R. 112 at 4.)

individuals with a valid doctor's note based on legitimate medical needs or for those with a confirmed overnight work shift. (*Id.* ¶ 9.) This exception has been offered to Zemater multiple times, like when he had to work overnight, but he nevertheless alleges that Hesed House discriminates against him by not excepting him from the Policy on the basis of his alleged sleep disorder. (*Id.* ¶ 8.) Zemater has never been diagnosed by a doctor with a sleep disorder, but he claims that such verification is unnecessary because he "fits the profile of a person" with such a disorder. (*Id.* ¶ 13.)

## I. HESED HOUSE'S MOTION TO DISMISS

### A. Procedural History

Zemater's second amended complaint alleged disability discrimination pursuant to Titles II and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Counts I and II); section 504 of the Rehabilitation Act of 1973, *id.* § 794 (Count III); and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* (Count IV). (R. 46 "SAC").[4]

The Court granted Hesed House's motion to dismiss Zemater's second amended complaint and afforded Zemater until September 4, 2024 to file a third amended complaint. (MTD Order at 1–2.) The Court concluded that Counts I, III, and IV failed to state a claim because the complaint merely alleged Hesed House was a non-profit organization, and there are no allegations that Hesed House is an instrumentality of a state or local government that would qualify as a public entity. (*Id.* at 2.) Count IV also failed because there was no allegation that Zemater exhausted his claim by presenting it to the Human Rights Commission. (*Id.*) Count II failed for two reasons: the complaint did not plausibly allege that (1) Zemater had a disability, instead he alleged that he had never been diagnosed with a sleep disorder and did not allege how the alleged disorder had impacted a major life activity and (2) Zemater failed to allege he was denied a full and equal opportunity to enjoy the services Hesed House provides, since he alleged that Hesed House provides accommodation for those who have a medical note or an overnight work shift. (*Id.* at 3.)

Zemater did not file a revised complaint within the deadline, and so the Court entered judgment for Hesed House. (R. 75.) Zemater subsequently filed motions for relief from judgment (R. 77), and to file a third amended complaint, (R. 85) which the Court granted. (R. 88.) Zemater filed a third amended complaint. (*See* TAC.) Presently pending is the defendants' fourth iteration of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Zemater's complaint. (R. 104; *see generally* R. 17; R. 48; R. 81.) On January 30, 2025, the Court held an evidentiary hearing on the present motion. (R. 115.)

---

[4] The Court had jurisdiction over these claims under 28 U.S.C. § 1331.

### B. Legal Standard

Where, as here, the plaintiff is *pro se*, the Court accords a liberal reading of the complaint. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). Nevertheless, "[t]his does not mean that [the Court] will fill in all of the blanks in a *pro se* complaint." *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996.) The Court also will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### C. Analysis

The third amended complaint fails to state a claim. Before reaching Hesed House's arguments for dismissal under 12(b)(6), the Court briefly addresses whether Zemater's complaint is moot under 12(b)(1). *See Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. July 21, 1998 ("If the court dismisses . . . for lack of subject matter jurisdiction, the accompanying defense becomes moot and need not be addressed."). The Court has a duty to explore this issue *sua sponte* because, "[r]egardless of whether a justiciable controversy existed at the time a suit was filed, a federal court must abjure decision on a question that intervening events have rendered moot, lest it run afoul of the judiciary's longstanding prohibition on rendering merely 'advisory' opinions." *Citizens for Appropriate Rural Roads, Inc. v. Foxx*, 14 F. Supp. 3d 1217, 1230 (S.D. Ind. 2014) (collecting cases). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). Here, at the evidentiary hearing on the pending motion, Zemater conceded that his complaint seeking injunctive relief from the Policy is now moot, as he no longer resides at Hesed House. Even so, the third amended complaint seeks compensatory damages, which precludes a finding a mootness. Accordingly, the Court now analyzes the complaint under Rule 12(b)(6).

Beginning with Count II, Zemater alleges that he has a disability based on online articles he has read about sleep disorders. (TAC ¶¶ 13, 18.) He also claims that his sleep disorder is obvious, and so he is not obligated to provide Hesed House with a doctor's note. (*Id.* ¶ 21.) These allegations fail to create an inference of disability that rises beyond a speculative level. Zemater's allegations amount to nothing more than a non-verified theory that he has a sleep disorder based on his perceived "pattern of falling asleep around 2 a.m. and getting up at 10 a.m." (*Id.* ¶ 22.) Also, nothing about these allegations supports an inference that Zemater's disability is obvious. *E.g.*, *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995) ("For example, it would appear to most observers that an employee who suffers frequent seizures at work likely has some disability.").

But even if Zemater could plausibly allege that he is disabled, the complaint nonetheless fails as it does not plausibly allege that Hesed House has discriminated against Zemater. Under Title III, discrimination means "a failure to make reasonable modifications in policies . . . when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682, (2001) (emphasis in original) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)). In other words, "[Hesed House] is not required to provide the specific accommodation that [Zemater] requests; nonetheless it must at least provide a reasonable one." *Bahan v. CNH Indus. Am., LLC*, No. 18 C 1414, 2020 WL 7763532, at *10 (C.D. Ill. Dec. 29, 2020) (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005)).[5] "[A] modification is unreasonable if it imposes an 'undue financial and administrative burden' or requires a 'fundamental alteration' in the nature of the privilege or program." *Ganden v. Nat'l Collegiate Athletic Ass'n*, No. 96 C 6953, 1996 WL 680000, at *14 (N.D. Ill. Nov. 21, 1996) (collecting cases).

Here, nothing in Zemater's complaint supports an inference that the Policy is unreasonable or unreasonably applied. According to Zemater, the Policy exists to allow the staff to "sweep[] and mop[] the floors" of a single room containing forty-two bunk beds. (TAC ¶¶ 8, 31.) Common-sense counsels that the Policy, which allows for daily cleaning of a men's shelter is not only reasonable, but prudent. Zemater's unsupported factual allegation that Hesed House's daily cleaning is unreasonable because it is unnecessary is implausible; simply alleging his subjective belief that *he* keeps his bunk bed and cubicle tidy does not come close to supporting an inference that the Policy, which is designed to accommodate the *entire* population that Hesed House serves, is unreasonable. It is also reasonable for Hesed House to require employer and doctor verification before extending exceptions to the Policy. *See generally Keen v. Teva Sales & Mktg., Inc.*, 303 F. Supp. 3d 690, 726 (N.D. Ill. 2018) (concluding that refusing to allow employee to return to work without doctor's note was a legitimate nondiscriminatory reason under Title VII); *Jackson v. Jernberg Indus., Inc.*, 677 F. Supp. 2d 1042, 1050 (N.D. Ill. 2010) (explaining that "[c]ourts have found that a number of employer verification requirements are permissible under the FMLA" like requiring a doctor's note, as long as the employer does not "discourage[] the employee from exercising his FMLA leave"). The inference of reasonableness is common sense; the Policy affords a rationale means for Hesed House to verify requests for exceptions to its Policy. But Zemater's requested modification to the Policy is unreasonable; even viewed in a light most favorable to Zemater, his requested modification plausibly undermines Hesed House's ability to provide clean and safe places to sleep for the homeless population it serves. And Zemater's allegations that he has been granted an exception to the Policy previously

---

[5] In determining whether reasonable accommodations have been provided under Title III, precedent interpreting the Rehabilitation Act and Title II of the ADA are instructive. *Vande Zande v. Wisc. Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995).

4

undermines any inference that the Policy is unreasonably applied. (*Id.* ¶ 8.) Zemater has never alleged that Hesed House would not afford him an exception if he adhered to the Policy; he simply alleges that requiring him to verify his need for an exception is discrimination, but, for the above reasons, it is not. The Court concludes that the complaint fails to state a claim based on Hesed House's Policy.

Zemater's remaining claims fail because he does not plausibly allege that Hesed House is a public entity. As set forth in the MTD Order, Title II of the ADA, the IHRA, and the Rehabilitation Act apply only to public entities, *i.e.*, "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). There is no question that Hesed House, which Zemater alleges is a non-profit, is not a governmental body. *See Melton v. Orange Cnty. Democratic Party*, 304 F. Supp. 2d 785, 788 (M.D.N.C.)) *aff'd*, 111 F. App'x 707 (4th Cir. 2004) (collecting cases) ("All of these [entities which federal courts have found to be public entities] have been given authority under local law to provide services for the city or state."). The only other avenue available to Zemater, then, is if he could plausibly allege that Hesed House is an instrumentality of the government; he cannot. Although the Seventh Circuit has not addressed the issue directly, the Second Circuit has held that "'instrumentality' is . . . best read as referring to a *creature of a state or municipality*." *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (emphasis added). As the court explained, "a private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity" but rather a "parallel entity." *Id.* Accordingly, even accepting Zemater's factual allegations that Hesed House has received government funding or is coordinating with local government, absent any plausible allegation Hesed House belongs to and was created by the government, his claims fail.

In his reply brief, Zemater argues that *Martin v. Emmauel*, No. 19 C 1709, Dkt No. 22 (N.D. Ill. Aug. 27, 2019), and *Carter v. City of Chicago*, No. 20 C 1083, Dkt. No. 46 (N.D. Ill. Feb. 17, 2021), stand for the proposition that "where a partnership exists between a local unit of government and a homeless shelter, liability is established for [the] homeless shelter[.]" (R. 116 ¶ 11.) He is incorrect. First, *Martin* and *Carter* involved claims asserted against the City itself. *Martin*, at 1; *Carter*, at 1. Second, on the City's motions to dismiss, in assessing the scope of the *City's* liability (not the homeless shelter's) the court analyzed whether the complaints adequately alleged that the homeless shelters constituted a "service, program, or activity" of the City. *Martin*, at 4; *Carter*, at 7. Because the complaints alleged that their interactions with the homeless shelters arose "through the City's operation of its Shelter Program," the complaints plausibly alleged that the shelters were a City service, program, or activity; said differently, the complaint supported an inference that the City and the homeless shelters were engaged in a joint venture or had a close relationship. *Martin*,

5

at 4–5; *Carter*, at 8. Critically, contrary to Zemater's view, the court did not decide that the plaintiffs had plausibly alleged liability for the homeless shelter. Here, unlike in *Martin* and *Carter*, Zemater's allegations are against Hesed House, a non-profit that is not a public entity. And, in any event, the Court does not credit unfounded legal theories like Zemater's claim that Hesed House and the City of Aurora are engaged in a "joint venture" and a "partnership." (*See* TAC ¶ 26.)

## II.   ZEMATER'S MOTION TO RECONSIDER

Also pending before the Court is Zemater's motion to reconsider the Sanctions Order. (*See* R. 110.)[6] Motions to reconsider are governed by Rule 54(b), which provides that "any order or other decision . . . may be revised at any time before the entry of a judgment . . . ." Fed. R. Civ. P. 54(b). The Court only grants reconsideration if the movant clearly establishes "(1) that the court committed a manifest error of law or fact," or (2) if the moving party reveals "newly discovered evidence." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). Reconsideration is an "extraordinary remedy" reserved for "exceptional," *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008), or "compelling" circumstances. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006).

Zemater's motion claims to be based upon newly discovered evidence; he asserts that the Executive Director of Hesed House, Joe Jackson, told him that he "is no longer welcome to stay" at Hesed House because of the instant lawsuit. (R. 110 ¶ 2.) He further alleges that Jackson explained that the pending lawsuit has negatively impacted Hesed House's insurance coverage and that, without insurance, Hesed House must close its doors to the 500 people it currently serves. (*Id.* ¶¶ 4–5.) Zemater has also threatened Hesed House with filing two additional lawsuits against them. (*Id.* at 2.) He claims that he is now barred from all organizations associated with Hesed House. (*Id.* ¶¶ 8–9.) He also asserts that he has been barred from returning to Hesed House property to retrieve his personal property, such as his mail. (*Id.*)

After setting forth these factual allegations, the motion stops short of offering any legal argument as to why these facts create the exceptional circumstance warranting reconsideration of the Sanctions Order. This omission alone is sufficient basis to deny Zemater's motion. *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995). What's more, the Court has advised Zemater that:

> the operative complaint defines the issues before the Court. The Court is not here to resolve all issues between the plaintiff and the defendant; this case is limited to the issues raised in the amended complaint. The Court

---

[6] The Sanctions Order also denied Zemater's request for a preliminary injunction, but Zemater claims to only seek reconsideration of the Court's order regarding sanctions. (R. 110.)

6

> cautions the parties that motions filed that go beyond the scope of the pleadings may be viewed as frivolous.

(R. 103.) Zemater has not heeded this warning. The Court concludes that his motion, (as was rejected in the Sanctions Order), which is based on facts outside of the operative complaint, is frivolous. *See Janky v. Batistatos*, 259 F.R.D. 373, 379 (N.D. Ind. 2009) ("A claim is frivolous if the probability of success is very low, *Maxwell v. KPMG LLP,* 520 F.3d 713, 719 (7th Cir. 2008), or one '"that no reasonable person could supposed to have any merit,' *Lee v. Clinton,* 209 F.3d 1025, 1026 (7th Cir. 2000)."). Zemater's motion for reconsideration is denied.

### III.  ZEMATER'S MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

Zemater additionally seeks leave to file a Fourth Amended Complaint based on his allegation that he is presently barred from residing at Hesed House because of the pending lawsuit. (R. 112.) "Under Rule 15(a) of the Federal Rules of Civil Procedure, the district court may grant leave to amend pleadings and such leave 'shall be freely given when justice so requires.'" *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). "However, leave to amend is "inappropriate where there is . . . dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Id.* A court's decision about whether to allow a plaintiff to file an amended complaint is afforded "significant deference" and will only be reversed if the court "refused to grant the leave 'without any justifying reason.'" *Ewing v. 1645 W. Farragut LLC*, 90 F.4th 876, 892 (7th Cir. 2024) (citation omitted).

Here, Zemater claims that his new allegations support an inference that Hesed House discriminated against him based on his disability. (R. 112 ¶¶ 2, 5.) Not so; these allegations are futile because they fall short of a plausible claim that Zemater is disabled or that Hesed House failed to make reasonable modifications to its Policy. (*See* TAC ¶ 13.) The new allegations are also consistent with a dilatory motive as evidenced by Zemater throughout this litigation; each time Hesed House has filed a motion to dismiss, Zemater has sought leave to amend. (*Compare* R. 17; R. 48; R. 81; R. 104, *with* R. 27; R. 76; R. 89; R. 112.) But any amendments filed have not added much to the allegations, which indicates that Zemater's purpose is to unjustifiably extend this litigation.

Additionally, allowing Zemater to amend his complaint to add a new ADA retaliation claim would be unduly prejudicial to Hesed House. "Undue prejudice occurs where the amendment 'brings entirely new and separate claims . . . or at least entails more than an alternative claim or a change in the allegations of the complaint and where the amendment would require expensive and time-consuming additional discovery.'" *Tri-State Disposal, Inc. v. Vill. of Riverdale,* No. 18 C 2138, 2020 WL 5627734, at *2

7

(N.D. Ill. Sept. 21, 2020) (citation omitted). The wrong asserted in the prior complaints was Hesed House's alleged failure to accommodate Zemater, which he claims harmed him by not allowing him to sleep past 7 a.m. (*See generally* TAC.) But Zemater's retaliation claim asserts that his status as a Hesed House resident was revoked after two years of this litigation and his threats to file new lawsuits against Hesed House alleging slander and a violation based on the removal of his car from the Hesed House lot. (R. 112 ¶ 1.) Because any retaliation claim would turn on new factual and legal claims, amendment will not be allowed. *See e.g.*, *Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 353 (7th Cir. 1982) (concluding that the district court did not abuse its discretion in refusing to allow plaintiffs to amend their complaint in part because the motion would inject an entirely new theory into the litigation). And the cost of extending this litigation even further, thereby requiring the defendant to continue to defend against Zemater's ever-evolving claims, unfairly prejudices the defendant. Indeed, according to Zemater, this lawsuit has put Hesed House in jeopardy of shutting down. (R. 110 ¶¶ 4–5.) And this case has been lengthy with limited discovery ongoing; the case was originally filed in 2022 and since then, Zemater has filed four complaints and Hesed House has filed four motions to dismiss. This case has reached its end.[7]

Date: February 3, 2025

JEREMY C. DANIEL
United States District Judge

---

[7] At the January 30th evidentiary hearing, Hesed House's attorney informed the Court that Zemater had been contacting his client directly. In light of this, and given Zemater's prior inappropriate statements to defense counsel, which resulted in the Court admonishing the plaintiff, (*see* R. 84) the Court ordered Zemater to direct all future communications about this lawsuit to Hesed House's attorney and to avoid contacting Hesed House's staff regarding this lawsuit.